**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **CLINTON BARKLEY, RASHAAN BOWREY, ANDREW HANCOCK, and PHILIP RAMIREZ, on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>**-against-**<br><br>**NYU LANGONE MSO, INC., NYU LANGONE HEALTH SYSTEM, and NYU LANGONE HOSPITALS,**<br><br>**Defendants.** | **Case No.: 1:24-cv-09747-AT** |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR COURT-AUTHORIZED NOTICE PURSUANT TO 29 U.S.C. § 216(B)**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................... 1

FACTS ........................................................................................................................... 1

   I.   I.T. SUPPORT EMPLOYEES SHARE THE SAME PRIMARY JOB DUTY. ............. 2

   II.  NYU LANGONE'S COMPENSATION POLICIES ARE CONSISTENT. .................. 3

   III. I.T. SUPPORT EMPLOYEES REGULARLY WORKED MORE THAN 40 HOURS
       EACH WORKWEEK. ......................................................................................... 4

PROCEDURAL BACKGROUND .................................................................................. 5

ARGUMENT ................................................................................................................. 5

   I.   CERTIFICATION OF AN FLSA COLLECTIVE ACTION IS APPROPRIATE. ......... 6

      A.  The Lenient Standard Under the FLSA Favors Granting Conditional Certification
           at this Early Stage. ..................................................................................... 6

      B.  Plaintiffs and the Proposed FLSA Collective are Similarly Situated. ...................... 9

         1.   Plaintiffs and I.T. Support Employees Are Similarly Situated with Respect to
              Their FLSA Claims. ............................................................................... 9

         2.   I.T. Support Employees Are Similarly Situated with Respect to Their Job
              Duties. ................................................................................................ 10

         3.   At This Stage, the Court Does Not Resolve Factual Disputes or Address Merits
              Issues. ................................................................................................ 12

   II.  THE COURT SHOULD APPROVE THE PROPOSED NOTICE AND
        DISTRIBUTION PLAN. ..................................................................................... 14

CONCLUSION ............................................................................................................ 18

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A.H. Phillips v. Walling*,
    324 U.S. 490 (1945)....................................................................................................5

*Alvarez v. Schnipper Rests. LLC*,
    No. 16 Civ. 5779 (ER), 2017 WL 6375793 (S.D.N.Y. Dec. 12, 2017)...................................11

*Barrentine v. Arkansas-Best Freight Sys., Inc.*,
    450 U.S. 728 (1981)....................................................................................................6

*Bhumithanarn v. 22 Noodle Mkt. Corp.*,
    No. 14-cv-2625 (RJS), 2015 WL 4240985 (S.D.N.Y. July 13, 2015)...................................15

*Braunstein v. E. Photographic Labs., Inc.*,
    600 F.2d 335 (2d Cir. 1978).........................................................................................6

*Calvillo v. Bull Rogers, Inc.*,
    267 F. Supp. 3d 1307 (D.N.M. 2017)............................................................................15

*Campbell v. City of Los Angeles*,
    903 F.3d 1090 (9th Cir. 2018) ......................................................................................7

*Cohen v. Gerson Lehrman Grp., Inc.*,
    686 F. Supp. 2d 317 (S.D.N.Y. 2010)...................................................................9, 11, 13

*Cruz v. Hook-Superx, LLC*,
    No. 09 Civ. 7717(PAC), 2010 WL 3069558 (S.D.N.Y. Aug. 5, 2010)..................................13

*Cunningham v. Elec. Data Sys. Corp.*,
    754 F. Supp. 2d 638 (S.D.N.Y. 2010)............................................................................8

*Cuzco v. Orion Builders, Inc.*,
    477 F. Supp. 2d 628 (S.D.N.Y. 2007)............................................................................6

*Davis v. Dynata, LLC*,
    No. 3:22-CV-1062 (SVN), 2023 WL 6216809 (D. Conn. Sep. 25, 2023) .............................12

*Diatta v. Iguana N.Y. Ltd.*,
    No. 15 CIV 6399(AT), 2016 WL 2865132 (S.D.N.Y. May 10, 2016) (Torres,
    J.)..............................................................................................................14, 17, 18

*Djurdjevich v. Flat Rate Movers, Ltd.*,
    No. 17-cv-261 (AJN), 2018 WL 5919519 (S.D.N.Y. Nov. 13, 2018).........................10, 11, 13

*Eley v. Stadium Grp., LLC*,
    No. 14-cv-1594 (KBJ), 2015 WL 5611331 (D.D.C. Sept. 22, 2015) ......................................15

*Fasanelli v. Heartland Brewery, Inc.*,
    516 F. Supp. 2d 317 (S.D.N.Y. 2007) ......................................................................................17

*Fernandez v. Pinnacle Grp. N.Y. LLC*,
    No. 21 CIV. 10702 (AT), 2024 WL 2055059 (S.D.N.Y. May 7, 2024) (Torres,
    J.) ......................................................................................................................................16, 17

*Fischer v. Gov't Emps. Ins. Co*.,
    No. 23-cv-2848 (SJB) (ST), 2025 U.S. Dist. LEXIS 60973 (E.D.N.Y. Mar. 31,
    2025) ................................................................................................................................7, 9, 12

*Flood v. Just Energy Mktg. Corp.*,
    No. 15 Civ. 2012 (AT), 2016 WL 354078 (S.D.N.Y. Jan. 25, 2016) (Torres,
    J.) .............................................................................................................................................8, 11

*Franze v. Bimbo Foods Bakeries Distrib., LLC*,
    No. 7:17-cv-03556(NSR)(JCM), 2019 WL 1417125 (S.D.N.Y. Mar. 29, 2019) ..........9, 11, 13

*Garcia v. Chipotle Mexican Grill, Inc.*,
    No. 16 Civ. 601 (ER), 2016 WL 6561302 (S.D.N.Y. Nov. 4, 2016) ......................................17

*Glatt v. Fox Searchlight Pictures, Inc.*,
    811 F.3d 529 (2d Cir. 2016) ......................................................................................................7

*Gomez v. Terri Vegetarian LLC*,
    No. 17-CV-213 (JMF), 2017 WL 2628880 (S.D.N.Y. June 16, 2017) ...................................18

*Guaman v. 5 M Corp.*,
    No. 13 Civ. 03820(LGS), 2013 WL 5745905 (S.D.N.Y. Oct. 23, 2013) ...............................12

*Guillen v. Marshalls of MA, Inc.*,
    750 F. Supp. 2d 469 (S.D.N.Y. 2010) ......................................................................................7

*Hoffman-LaRoche v. Sperling*,
    493 U.S. 165 (1989) ...........................................................................................................6, 14

*Hoffmann v. Sbarro, Inc.*,
    982 F. Supp. 249 (S.D.N.Y. 1997) ...........................................................................................6

*Indergit v. Rite Aid Corp.*,
    No. 08 CIV. 9361(PGG), 2010 WL 2465488 (S.D.N.Y. June 16, 2010) ...............................13

*Irvine v. Destination Wild Dunes Mgmt., Inc.*,
    132 F. Supp. 3d 707 (D.S.C. 2015) .........................................................................................15

*Jackson v. Bloomberg, L.P.*,
298 F.R.D. 152 (S.D.N.Y. 2014) ....................................................................................8

*Lazaar v. Anthem Cos., Inc.*,
678 F. Supp. 3d 434 (S.D.N.Y. 2023)............................................................................8

*Lopez v. JVA Indus., Inc.*,
No. 14 Civ. 9988(KPF), 2015 WL 5052575 (S.D.N.Y. Aug. 27, 2015) ......................17

*Lynch v. United Servs. Auto Ass'n*,
491 F. Supp. 2d 357 (S.D.N.Y. 2007)...........................................................................8

*Mahoney v. CommonSpirit Health*,
No. 8:21CV23, 2021 WL 5907929 (D. Neb. Dec. 14, 2021) ......................................12

*Mata v. Foodbridge LLC*,
No. 14 Civ. 8754(ER), 2015 WL 3457293 (S.D.N.Y. June 1, 2015) ..........................11

*Mei Xing Yu v. Hasaki Rest., Inc.*,
944 F.3d 395 (2d Cir. 2019)...........................................................................................5

*Mercado v. Metro. Transp. Auth.*,
No. 20 CIV. 6533, 2021 WL 2593462 (S.D.N.Y. June 24, 2021) (Torres, J.).............7, 15, 18

*Michael v. Bloomberg L.P.*,
No. 14-cv-2657 (TPG), 2015 WL 1810157 (S.D.N.Y. Apr. 17, 2015) ........................15

*In re Milos Litig.*,
08 Civ. 6666(LBS), 2010 WL 199688 (S.D.N.Y. Jan. 11, 2010)................................17

*Morgan v. Family Dollar Stores, Inc.*,
551 F.3d 1233 (11th Cir. 2008) .............................................................................10, 12

*Morris v. Lettire Const., Corp.*,
896 F. Supp. 2d 265 (S.D.N.Y. 2012)..........................................................................16

*Myers v. Hertz Corp.*,
624 F.3d 537 (2d Cir. 2010)...............................................................................7, 8, 10

*O'Conner v. Agilant Sols., Inc.*,
419 F. Supp. 3d 739 (S.D.N.Y. 2019)..........................................................................12

*In re Penthouse Exec. Club Comp. Litig.*,
No. 10 Civ. 1145(NRB), 2010 WL 4340255 (S.D.N.Y. Oct. 27, 2010) ........................9

*Perkins v. S. New England Tel. Co.*,
669 F. Supp. 2d 212 (D. Conn. 2009)..........................................................................13

*Qiang Lu v. Purple Sushi Inc.*,
  447 F. Supp. 3d 89 (S.D.N.Y. 2020)........................................................................6, 8, 9

*Regan v. City of Hanahan*,
  No. 2:16-cv-1077-RMG, 2017 WL 1386334 (D.S.C. Apr. 17, 2017)....................................15

*Romero v. ABCZ Corp.*,
  No. 14 CIV. 3653 AT HBP, 2015 WL 2069870 (S.D.N.Y. Apr. 28, 2015)
  (Torres, J.)...........................................................................................................7, 15

*Sanchez v. Salsa Con Fuego, Inc.*,
  No. 16-CV-473 (RJS) (BCM), 2016 WL 4533574 (S.D.N.Y. Aug. 24, 2016) ......................15

*Scott v. Chipotle Mexican Grill, Inc.*,
  954 F.3d 502 (2d Cir. 2020)...........................................................................................7

*Sipas v. Sammy's Fishbox, Inc.*,
  No. 05 Civ. 10319(PAC), 2006 WL 1084556 (S.D.N.Y. Apr. 24, 2006) ................................9

*Strauch v. Comput. Scis. Corp.*,
  No. 3:14cv 956 (JBA), 2015 WL 3727804 (D. Conn. June 9, 2015) .....................................13

*Thrower v. UniversalPegasus, Int'l Inc.*,
  484 F. Supp. 3d 473 (S.D. Tex. 2020) ..............................................................................15

*Varghese v. JP Morgan Chase & Co.*,
  No. 14 Civ. 1718 (PGG), 2016 WL 4718413 (S.D.N.Y. Sept. 9, 2016) ..........................16, 17

*Vecchio v. Quest Diagnostics Inc.*,
  No. 16 Civ. 05165 (ER), 2018 WL 2021615 (S.D.N.Y. Apr. 30, 2018) ..............................17

*Walston v. Edward J. Young, Inc.*,
  No. 15-CV-457 (LDW)(AYS), 2016 WL 3906522 (E.D.N.Y. Feb. 22, 2016)......................13

*Zhang v. Ichiban Grp., LLC*,
  No. 1:17-CV-148, 2020 WL 1030651 (N.D.N.Y. Mar. 3, 2020) ....................................14, 16

**Statutes**

29 U.S.C. § 207(a)(1)..................................................................................................5

29 U.S.C. § 216(b) ..................................................................................................1, 6

## INTRODUCTION

Plaintiffs Clinton Barkley, Rashaan Bowrey, Andrew Hancock, and Philip Ramirez ("Plaintiffs"), on behalf of themselves and all others similarly situated, present a narrow, common legal issue that is well-suited for collective resolution: whether the NYU Langone Defendants misclassified them and other I.T. Support Employees as exempt from the protections of the Fair Labor Standards Act ("FLSA") and failed to pay them overtime compensation. Plaintiffs bring this case as a collective action under the FLSA, 29 U.S.C. § 216(b), against the NYU Langone Defendants (collectively, "NYU Langone") on behalf of all individuals who have worked as I.T. Support Employees at NYU Langone nationwide, at any time since December 18, 2021 (the "FLSA Collective"). Through this motion, Plaintiffs seek to protect their rights and the rights of similarly situated I.T. Support Employees by issuing Court-authorized notice and allowing potential opt-ins to join this action to recover unpaid wages. Plaintiffs exceed their low burden for this motion. Plaintiffs show—through the well-pleaded allegations in the First Amended Complaint and their sworn declarations—that I.T. Support Employees are subject to the same unlawful practices, share similar primary job duties, were classified as exempt, and worked overtime hours but were not paid overtime compensation. Plaintiffs therefore respectfully request that the Court grant conditional certification and authorize notice to FLSA Collective members so that they may protect their rights.

## FACTS

NYU Langone is a privately owned academic medical center and health system headquartered in New York, New York.[1] Plaintiffs and other similarly situated I.T. Support Employees provide on-site and remote I.T. support, including installing and troubleshooting I.T.

---

[1] Doc. No. 24 ¶¶ 2, 39.

1

equipment and software and responding to I.T. support tickets.[2] Plaintiffs and other I.T. Support Employees, which Plaintiffs estimate to be at least dozens of individuals,[3] share the same primary job duty of providing on-site and remote I.T. support, regularly worked more than 40 hours per workweek, and were subject to the same compensation policies that classified them as exempt from overtime and deprived them of overtime pay for hours worked over 40 hours per workweek.

## I.    I.T. SUPPORT EMPLOYEES SHARE THE SAME PRIMARY JOB DUTY.

NYU Langone's Medical Center Information Technology ("MCIT") division centrally manages technology systems across the hospital's various locations.[4] MCIT organizes I.T. Support Employees into teams based in offices at various off-site locations that are all assigned to provide technology support to NYU Langone employees. For example, MCIT has a Faculty Group Practice ("FGP") Tech Support Team, based in New Hyde Park, New York[5]; a Clinical Affairs Technology Team ("CATT") based in Las Vegas, Nevada[6]; and an AV Support Team based in New York, New York,[7] as well as technology support offices in New Jersey[8] and Florida.[9]

Although Plaintiffs worked as I.T. Support Employees in various locations and were assigned various titles,[10] their testimony confirms that I.T. Support Employees share the same

---

[2] Declaration of Clinton Barkley ("Barkley Decl.") ¶¶ 1, 6; Declaration of Rashaan Bowrey ("Bowrey Decl.") ¶¶ 1, 8; Declaration of Andrew Hancock ("Hancock Decl.") ¶¶ 1, 7; Declaration of Philip Ramirez ("Ramirez Decl.") ¶¶ 1, 7; *see also* Doc. No. 24 ¶ 70.

[3] Barkley Decl. ¶ 4 (16 individuals on FGP Tech Support Team in New York area); Bowrey Decl. ¶ 4 (10 to 15 employees on AV Support Team); Hancock Decl. ¶ 3 (16 employees on CATT across Nevada, Florida, and New York); Ramirez Decl. ¶ 5 (same).

[4] Doc. No. 24 ¶ 3; *see also* Barkley Decl. ¶ 4; Bowrey Decl. ¶ 5; Hancock Decl. ¶ 4; Ramirez Decl. ¶ 4. Although MCIT employees sit in various NYU Langone locations, MCIT generally operates in a centralized fashion, serving NYU Langone as a whole. *See, e.g.*, *About the Health Tech Hub*, NYU LANGONE HEALTH, https://med.nyu.edu/our-community/health-technology/about-us (last visited Mar. 27, 2025) (describing an MCIT-sponsored initiative "as a centralized resource" and MCIT Clinical Informatics as "the institution's clinical information technology and information backbone").

[5] Barkley Decl. ¶¶ 2–4.

[6] Hancock Decl. ¶¶ 2–3; Ramirez Decl. ¶¶ 2–3.

[7] Bowrey Decl. ¶¶ 2, 4.

[8] Doc. No. 24 ¶ 2.

[9] Hancock Decl. ¶¶ 3, 13, 18 ; Ramirez Decl. ¶ 16.

[10] Barkley Decl. ¶¶ 1–3; Bowrey Decl. ¶¶ 1–4; Hancock Decl. ¶¶ 1–3; Ramirez Decl. ¶¶ 1–3, 10.

primary job duty: to provide technical support and software troubleshooting for other NYU Langone employees.[11] NYU Langone employees file help desk tickets requesting I.T. support and I.T. Support Employees are tasked with responding to those tickets.[12] I.T. Support Employees also assess standard I.T. hardware needs and provide in-person technical support at NYU Langone.[13]

I.T. Support Employees in other NYU Langone locations had the same job duties that Plaintiffs did, despite working in different offices.[14] Plaintiffs regularly interacted with other I.T. Support Employees who had the same primary job duties as they did across NYU Langone offices in Brooklyn, Manhattan, and Long Island, as well as in Las Vegas.[15] In addition, Plaintiff Hancock regularly interacted with two I.T. Support Employees based in Florida.[16] Moreover, any differences in job titles did not correspond to a difference in job duties; indeed, even when an employee's job title changed during the course of their employment, their primary job duties remained consistent.[17]

## II.    NYU LANGONE'S COMPENSATION POLICIES ARE CONSISTENT.

In addition to requiring I.T. Support Employees to perform the same job duties, NYU Langone also maintained consistent policies and practices with respect to all I.T. Support Employees, regardless of their office locations and job titles.  NYU Langone classifies I.T. Support

---

[11] Barkley Decl. ¶¶ 6, 9; Bowrey Decl. ¶¶ 8, 11; Hancock Decl. ¶¶ 7, 10; Ramirez Decl. ¶¶ 7, 10.

[12] Barkley Decl. ¶ 10; Bowrey Decl. ¶ 12; Hancock Decl. ¶¶ 11–12; Ramirez Decl. ¶ 11.

[13] *Id.* To be clear, the I.T. needs related to standard technological support that would be true of any modern workplace, not support related to specialized medical equipment. For example, Plaintiffs replaced computers, installed hardware, and responded to help desk tickets related to, for example, problems with Microsoft Office, *See, e.g.*, Hancock Decl. ¶ 11.

[14] Barkley Decl. ¶¶ 6, 13; Bowrey Decl. ¶¶ 8, 17; Hancock Decl. ¶¶ 7, 19; Ramirez Decl. ¶¶ 7, 16–17.

[15] Barkley Decl. ¶ 11 (naming six other I.T. Support Employees); Bowrey Decl. ¶ 13 (naming five other I.T. Support Employees); Hancock Decl. ¶ 18 (identifying another Plaintiff and five other individuals, three of whom are named, as other I.T. Support Employees); Ramirez Decl. ¶ 12 (naming five other I.T. Support Employees, including one Plaintiff).

[16] Hancock Decl. ¶ 18.

[17] Barkley Decl. ¶ 3 (no change in job duties between Tech I and Tech II job titles).

Employees as exempt from overtime pay and illegally fails to pay them overtime compensation, instead, paying them a salary.[18]

### III.    I.T. SUPPORT EMPLOYEES REGULARLY WORKED MORE THAN 40 HOURS EACH WORKWEEK.

NYU Langone's IT Support Employees consistently worked more than 40 hours per workweek and observed other I.T. Support Employees doing so as well.[19] I.T. Support Employees work long hours due to the demands of their role, regardless of geographic location or job title.[20]

Plaintiffs were typically scheduled for shifts of eight hours per day or more, five days per week.[21] The I.T. Support role, however, required Plaintiffs to work straight through from the start to end of their shift, not taking a lunch break.[22] Plaintiffs also regularly began work before the scheduled start of their shift, continued working after their shift ended, and responded to after-hours and weekend calls.[23] Plaintiffs worked long hours to complete their work, including responding to all pending I.T. Support tickets, taking after-hours calls requesting I.T. support, providing assistance for in-person meetings and events, and installing hardware.[24]

Although NYU Langone maintained a timekeeping system for its I.T. Support Employees, it only required them to clock in at the start of their shifts and did not permit them to clock out at the end of their workday or log time worked in the evenings or on the weekends.[25]

Based on their observations of other I.T. Support Employees and experience as I.T. Support Employees themselves, Plaintiffs know that NYU Langone applied these same policies and

---

[18] Barkley Decl. ¶¶ 7–8, 17–18; Bowrey Decl. ¶¶ 9–10, 20–21; Hancock Decl. ¶¶ 8–9, 20–21; Ramirez Decl. ¶¶ 8–9, 16–17.

[19] Barkley Decl. ¶¶ 12, 18; Bowrey Decl. ¶¶ 15–16, 20; Hancock Decl. ¶¶ 16, 20; Ramirez Decl. ¶¶ 14, 18–19.

[20] Barkley Decl. ¶ 16; Bowrey Decl. ¶¶ 16, 19; Hancock Decl. ¶¶ 17, 20; Ramirez Decl. ¶¶ 15, 17.

[21] Barkley Decl. ¶ 12; Bowrey Decl. ¶ 14; Hancock Decl. ¶ 14; Ramirez Decl. ¶ 13.

[22] Barkley Decl. ¶ 12; Bowrey Decl. ¶ 15; Hancock Decl. ¶ 15; Ramirez Decl. ¶ 14.

[23] Barkley Decl. ¶ 12; Bowrey Decl. ¶ 15; Hancock Decl. ¶ 16; Ramirez Decl. ¶ 14.

[24] Barkley Decl. ¶ 15; Bowrey Decl. ¶¶ 16, 19; Hancock Decl. ¶ 16; Ramirez Decl. ¶¶ 14–15.

[25] Barkley Decl. ¶ 20; Bowrey Decl. ¶ 24; Hancock Decl. ¶ 23; Ramirez Decl. ¶ 23.

practices regarding overtime classification and failure to pay overtime compensation to other I.T. Support Employees.[26] In addition, Plaintiffs regularly interacted with other I.T. Support Employees who also worked beyond their scheduled shifts because it was necessary to complete the technical support work with which they were tasked.[27]

## PROCEDURAL BACKGROUND

On December 18, 2024, Plaintiffs filed this class and collective action, alleging violations of the FLSA and New York state law. (Doc. No. 1.) NYU Langone filed its Answer on February 28, 2025. (Doc. No. 17.) Plaintiffs filed their First Amended Complaint on March 12, 2025. (Doc. No. 24.) NYU Langone filed its Answer to the First Amended Complaint on March 25, 2025. (Doc. No. 29.) Plaintiffs sought leave to file the instant motion in a letter filed March 12, 2025 (Doc. No. 25), and the Court set a briefing schedule for the motion on March 20, 2025 (Doc. No. 28).

## ARGUMENT

To protect against excessive hours of work, the FLSA requires that employers pay employees for hours worked over 40 in a workweek "at a rate not less than one and one-half times the regular rate at which [the employee] is employed." 29 U.S.C. § 207(a)(1). The FLSA "was designed 'to extend the frontiers of social progress' by 'insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.'" *A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (citation omitted). "'The principal congressional purpose in enacting the [FLSA] was to protect all covered workers from substandard wages and oppressive working hours, labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Mei Xing Yu v. Hasaki Rest., Inc.*, 944

---

[26] Barkley Decl. ¶¶ 17–18; Bowrey Decl. ¶¶ 17, 20–22; Hancock Decl. ¶¶ 20–21; Ramirez Decl. ¶¶ 19–21.
[27] Barkley Decl. ¶ 16; Bowrey Decl. ¶ 20; Hancock Decl. ¶ 20; Ramirez Decl. ¶ 19.

F.3d 395, 402 (2d Cir. 2019) (alterations in original) (quoting *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981)).

The FLSA's collective action provisions are an important aspect of achieving the statute's remedial purpose. Section 216(b) authorizes one or more employees to sue an employer on behalf of themselves and other "similarly situated" employees. 29 U.S.C. § 216(b). Collective actions allow workers the opportunity to lower individual costs by pooling resources and enable the "efficient resolution in one proceeding of common issues of law and fact." *Hoffman-LaRoche v. Sperling*, 493 U.S. 165, 170 (1989). Nationwide notice here will provide members of the FLSA Collective with a single forum in which to determine whether NYU Langone's compensation policies were lawful.

Because the FLSA statute of limitations runs until an employee files a consent form, *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 260 (S.D.N.Y. 1997), employees must receive timely notice in order for the "intended benefits of the collective action . . . to accrue," *Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628, 635 (S.D.N.Y. 2007). Here, timely notice is required to curtail the continued erosion of I.T. Support Employees' claims, "will facilitate swift and economic justice," *Qiang Lu v. Purple Sushi Inc.*, 447 F. Supp. 3d 89, 93 (S.D.N.Y. 2020), and is necessary to effectuate the FLSA's "broad remedial purpose," *Braunstein v. E. Photographic Labs., Inc.*, 600 F.2d 335, 336 (2d Cir. 1978). Plaintiffs have met their burden of showing that they are similarly situated to members of the FLSA Collective, and the Court should authorize that notice be sent to FLSA Collective members and approve Plaintiffs' proposed notice below.

## I.     CERTIFICATION OF AN FLSA COLLECTIVE ACTION IS APPROPRIATE.

### A. The Lenient Standard Under the FLSA Favors Granting Conditional Certification at this Early Stage.

The Second Circuit has "endorsed a two-step process for certifying FLSA collective actions based on the 'similarly situated' requirement." *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 515 (2d Cir. 2020). "'At step one, the district court permits a notice to be sent to potential opt-in plaintiffs if the named plaintiffs make a modest factual showing that they and others together were victims of a common policy or plan that violated the law.'" *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 529, 540 (2d Cir. 2016) (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010)). "The inquiry at the conditional certification stage . . . is focused . . . on whether Plaintiff[s] and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the [FLSA].'" *Romero v. ABCZ Corp.*, No. 14 CIV. 3653 AT HBP, 2015 WL 2069870, at *2 (S.D.N.Y. Apr. 28, 2015) (Torres, J.) (second alteration in original) (quoting *Myers*, 624 F.3d at 555). Moreover, "if named plaintiffs and party plaintiffs share legal or factual similarities material to the disposition of their claims, 'dissimilarities in other respects should not defeat collective treatment.'" *Scott*, 954 F.3d at 516 (quoting *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1114 (9th Cir. 2018)).

This initial conditional certification[28] stage has "a low standard of proof because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Myers*, 624 F.3d at 555 (citation omitted). "Plaintiffs may satisfy this requirement by relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members." *Mercado v. Metro. Transp. Auth.*, No. 20 CIV. 6533, 2021 WL 2593462, at *2 (S.D.N.Y. June 24, 2021) (Torres, J.) (quotation omitted); *see also Fischer v. Gov't Emps. Ins. Co.*, No. 23-cv-2848 (SJB) (ST), 2025 U.S. Dist. LEXIS 60973, at *13 (E.D.N.Y. Mar. 31,

---

[28] "Orders authorizing notice are often referred to as orders 'certifying' a collective action, even though the FLSA does not contain a certification requirement. The act of 'certifying' a collective action, however, means only that this Court has 'exercise[d] . . . [its] discretionary power . . . to facilitate the sending of notice to potential class members.'" *Guillen v. Marshalls of MA, Inc.*, 750 F. Supp. 2d 469, 475 (S.D.N.Y. 2010) (alterations in original) (citations omitted).

2025) ("[I]t is well recognized that the burden at the conditional certification stage is so low that even [a] Plaintiff's lone affidavit setting forth a common payment scheme may suffice." (alterations in original) (citation omitted)); *Lazaar v. Anthem Cos., Inc.*, 678 F. Supp. 3d 434, 439 (S.D.N.Y. 2023) ("Plaintiffs may satisfy this burden through allegations in the pleadings and affidavits." (citation omitted)); *Qiang Lu*, 447 F. Supp. 3d at 93 ("The modest factual showing can be made by relying on [plaintiff's] own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members." (alteration in original) (citation omitted)). "[A]t this stage, . . . 'the [C]ourt does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations.'" *Flood v. Just Energy Mktg. Corp.*, No. 15 Civ. 2012 (AT), 2016 WL 354078, at *3 (S.D.N.Y. Jan. 25, 2016) (Torres, J.) (second alteration in original) (quoting *Lynch v. United Servs. Auto Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)).

If the plaintiffs meet their burden to "demonstrate[] that 'similarly situated' employees exist, the Court should order that appropriate notice be given to members of the putative collective, and the action should continue as a 'collective action throughout the discovery process.'" *Lazaar*, 678 F. Supp. 3d at 439 (quoting *Cunningham v. Elec. Data Sys. Corp.*, 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010)). At the second stage, based "on a fuller record," the district court may determine that the plaintiffs who opted in are in fact not similarly situated and can then decertify the collective. *Myers*, 624 F.3d at 555. Accordingly, "courts generally grant conditional certification" because "the determination that plaintiffs are similarly situated is merely a preliminary one." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 158–59 (S.D.N.Y. 2014).

Plaintiffs have submitted sufficient evidence to meet the minimal standard required for conditional certification. Courts in this Circuit regularly grant conditional certification based on

the allegations of the complaint and employee declarations. *See, e.g.*, *Qiang Lu*, 447 F. Supp. 3d at 94–95 ("In keeping with the minimal showing standard, FLSA collective actions have been conditionally certified upon a single plaintiff's affidavit.") (collecting cases and conditionally certifying collective based on two declarations); *Franze v. Bimbo Foods Bakeries Distrib., LLC*, No. 7:17-cv-03556(NSR)(JCM), 2019 WL 1417125, at *2 (S.D.N.Y. Mar. 29, 2019) (conditionally certifying collective based on four declarations); *In re Penthouse Exec. Club Comp. Litig.*, No. 10 Civ. 1145(NRB), 2010 WL 4340255, at *3 (S.D.N.Y. Oct. 27, 2010) (requiring any more than the pleadings and concise affidavits "would undermine the purpose of the FLSA and . . . be inconsistent with the level of specificity that courts consistently require at the notice stage" (citations omitted)); *Cohen v. Gerson Lehrman Grp., Inc.*, 686 F. Supp. 2d 317, 331 (S.D.N.Y. 2010) (conditionally certifying collective based on complaint and plaintiff's declaration); *Sipas v. Sammy's Fishbox, Inc.*, No. 05 Civ. 10319(PAC), 2006 WL 1084556, at *2 (S.D.N.Y. Apr. 24, 2006) (same with three affidavits and complaint's allegations); *see also Fischer*, 2025 U.S. Dist. LEXIS 60973, at *12 ("The Court should conditionally certify the collective so 'long as the plaintiffs' allegations are sufficient on their face to support certification—even if such allegations conflict with the account asserted by the defendants.'") (citation omitted)).

## B. Plaintiffs and the Proposed FLSA Collective are Similarly Situated.

This case is about whether I.T. Support Employees were misclassified as exempt from overtime because they performed non-exempt technical support tasks as their primary duty. Here, Plaintiffs comfortably meet their burden to demonstrate that they are "similarly situated" to the potential opt-in FLSA Collective members they seek to represent.

### 1. Plaintiffs and I.T. Support Employees Are Similarly Situated with Respect to Their FLSA Claims.

Courts have held that a "blanket" classification policy, like NYU Langone's policy of paying all I.T. Support Employees a fixed salary without overtime, can meet the low threshold for conditional certification without much more. *See, e.g.*, *Djurdjevich v. Flat Rate Movers, Ltd.*, No. 17-cv-261 (AJN), 2018 WL 5919519, at *2 (S.D.N.Y. Nov. 13, 2018) (finding that "[p]laintiff has made a 'modest factual showing' that he and prospective collective action members 'were victims of a common policy or plan that violated the law'" based on allegations in complaint and four declarations (quoting *Myers*, 624 F.3d at 554–55)). Plaintiffs allege that they and other I.T. Support Employees were all subject to NYU Langone's unlawful policy of misclassifying I.T. Support Employees as exempt from overtime and not paying them overtime wages for the hours they worked over 40 in a workweek.[29] This is precisely the type of claim that the Second Circuit has recognized as being appropriate for conditional certification. *Myers*, 624 F.3d at 555 ("In a FLSA exemption case, plaintiffs [can meet their burden] by making some showing that 'there are other employees . . .who are similarly situated with respect to their job requirements and with regard to their pay provisions,' on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a common policy or scheme." (quoting *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008))).

**2. I.T. Support Employees Are Similarly Situated with Respect to Their Job Duties.**

Plaintiffs and other I.T. Support Employees also share similar job duties. Plaintiffs have shown that, regardless of their team assignment or geographic location, I.T. Support Employees have the same primary job duties: to provide technical support and troubleshooting services to NYU Langone employees, including on-site and remote I.T. support, equipment installation, and software support.

---

[29] Doc. No. 24 ¶ 84.

Courts routinely grant conditional certification where plaintiffs present similar job descriptions and other evidence of common job duties. *See, e.g.*, *Franze*, 2019 WL 1417125, at *2 (plaintiffs established that collective members had "similar job requirements" with four declarations); *Djurdjevich*, 2018 WL 5919519, at *3 (same); *see also Cohen*, 686 F. Supp. 2d at 330–31 (granting conditional certification based on complaint and two affidavits alleging that plaintiff and potential opt-ins had similar job duties and were classified as exempt).

Plaintiffs have also shown that they are similarly situated to other I.T. Support Employees because they worked in the same physical offices as one another, regularly communicated with each other across offices, and/or used the same platforms and systems to perform the same primary job of providing on-site and remote I.T. support. "Courts have found employees 'similarly situated' . . . where they . . . worked at different locations, as long as they were subject to the same allegedly unlawful policies. The fact that employees worked at different locations does not mean that they are not entitled to notice of this lawsuit." *Flood*, 2016 WL 354078, at *3 (second alteration in original) (citation omitted); *see also Alvarez v. Schnipper Rests. LLC*, No. 16 Civ. 5779 (ER), 2017 WL 6375793, at *4 (S.D.N.Y. Dec. 12, 2017) ("[C]ourts in this district 'routinely certif[y] conditional collective actions based on the plaintiff's affidavit declaring they have personal knowledge that other coworkers were subjected to similar employer practices.'" (second alteration in original) (quoting *Guo Qing Wang v. H.B. Rest. Group, Inc.*, No. 14-cv-813 (CM), 2014 WL 5055813, at *4 (S.D.N.Y. Oct. 7, 2014))); *Mata v. Foodbridge LLC*, No. 14 Civ. 8754(ER), 2015 WL 3457293, at *3 (S.D.N.Y. June 1, 2015) ("'[C]ourts in this circuit have routinely granted conditional collective certification based solely on the personal observations of one plaintiff's affidavit.'" (quoting *Hernandez v. Bare Burger Dio Inc.*, No. 12 Civ. 7794(RWS), 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013))). Courts have come to the same conclusion

11

with claims premised entirely on remote work. *See, e.g.*, *Davis v. Dynata, LLC*, No. 3:22-CV-1062 (SVN), 2023 WL 6216809, at *17 (D. Conn. Sep. 25, 2023) (rejecting argument that remote work meant plaintiff could not say that coworkers were subject to the same practices); *Mahoney v. CommonSpirit Health*, No. 8:21CV23, 2021 WL 5907929, at *4 (D. Neb. Dec. 14, 2021) ("[T]he [c]ourt rejects the [defendant's] suggestion that the plaintiff simply cannot know the facts that she has alleged because of [defendant's] remote work policies.").

Here, because Plaintiffs and other I.T. Support Employees were all subject to the same organization-wide policies that misclassified them as exempt and subjected them to the same illegal pay policy, any variation that may exist is not dispositive to the "similarly situated" analysis at this stage. *Guaman v. 5 M Corp.*, No. 13 Civ. 03820(LGS), 2013 WL 5745905, at *4 (S.D.N.Y. Oct. 23, 2013) ("In the Second Circuit, courts routinely find employees similarly situated 'despite not occupying the same positions or performing the same job functions and in the same locations, provided that they are subject to a common unlawful policy or practice." (citation omitted)); *see also Fischer*, 2025 U.S. Dist. LEXIS 60973, at *37 (granting conditional certification despite arguments of different job titles and duties among the collective).

### 3. At This Stage, the Court Does Not Resolve Factual Disputes or Address Merits Issues.

NYU Langone may claim that its exemption defense precludes a collective action because it requires "fact-specific inquiries" of the tasks that every I.T. Support Employee performed. However, "[j]ust because the inquiry is fact-intensive does not preclude a collective action where plaintiffs share common job traits." *Morgan*, 551 F.3d at 1263; *see also O'Conner v. Agilant Sols., Inc.*, 419 F. Supp. 3d 739, 746 (S.D.N.Y. 2019) (rejecting argument "'that the necessity of fact-intensive individualized inquiries will render a collective action unmanageable'" because "'the majority of courts . . . put these issues off until the decertification stage, when discovery is complete'" (quoting *Barry v. S.E.B. Serv. of N.Y., Inc.*, No. 11-CV-5089 (SLT)(JMA), 2013 WL

6150718, at *6 (E.D.N.Y. Nov. 22, 2013))); *Walston v. Edward J. Young, Inc.*, No. 15-CV-457 (LDW)(AYS), 2016 WL 3906522, at *6 (E.D.N.Y. Feb. 22, 2016) ("Ultimately, the issue of whether or not one or more exemptions to the FLSA apply in this case present[s] factual matters that are inappropriate to decide in the context of a motion for conditional collective action certification." (citation omitted)). "[S]ection 216(b) clearly applies to misclassification claims as well as other FLSA claims. Had Congress intended to exclude misclassification claims from collective actions, it would have done so." *Perkins v. S. New England Tel. Co.*, 669 F. Supp. 2d 212, 218 (D. Conn. 2009).

Accordingly, courts in this Circuit have rejected the argument that the fact-intensive nature of exemption defenses precludes conditional certification. *Cohen*, 686 F. Supp. 2d at 329–30 (collecting cases). In fact, courts routinely grant conditional certification in misclassification cases, including cases involving I.T. employees. *Strauch v. Comput. Scis. Corp.*, No. 3:14cv 956 (JBA), 2015 WL 3727804, at *1 (D. Conn. June 9, 2015) (conditionally certifying nationwide collective of I.T. systems administrators); *see also Franze*, 2019 WL 1417125, at *3 (same for collective of food distributors); *Djurdjevich*, 2018 WL 5919519, at *1 (same for furniture movers); *Cruz v. Hook-Superx, LLC*, No. 09 Civ. 7717(PAC), 2010 WL 3069558, at *2 (S.D.N.Y. Aug. 5, 2010) (same for nationwide collective of CVS assistant store managers); *Indergit v. Rite Aid Corp.*, No. 08 CIV. 9361(PGG), 2010 WL 2465488, at *10 (S.D.N.Y. June 16, 2010) (same for drug store managers and assistant managers); *Cohen*, 686 F. Supp. 2d at 320 (same for misclassified research associates).

The proper focus here is on Plaintiffs' submissions and whether they meet the low burden required for notice to issue. *See Franze*, 2019 WL 1417125, at *3 (rejecting defendant's argument that more is required "beyond the pleadings and affidavits submitted by Plaintiffs" at the

conditional certification stage). The declarations Plaintiffs have submitted in support of their motion exceeds the minimal showing required to meet "very low burden" of showing that NYU Langone's I.T. Support Employees are similarly situated at this "conditional certification stage." *Diatta v. Iguana N.Y. Ltd.*, No. 15 CIV 6399(AT), 2016 WL 2865132, at *3 (S.D.N.Y. May 10, 2016) (Torres, J.) (quotation omitted).

Plaintiffs have more than satisfied their modest burden of showing that the putative FLSA Collective of I.T. Support Employees are similarly situated. Accordingly, the putative FLSA Collective should be conditionally certified, and notice of this action should be issued to the FLSA Collective.

## II.    THE COURT SHOULD APPROVE THE PROPOSED NOTICE AND DISTRIBUTION PLAN.

Plaintiffs propose a reasonable notice campaign to ensure that I.T. Support Employees are adequately apprised of their right to opt in. Plaintiffs request that the Court exercise its broad discretion to authorize the proposed Notice and Consent to Join Form ("CTJ"), attached as Exhibit 1 to the Declaration of Artemio Guerra ("Guerra Decl."), to all members of the FLSA Collective. *See Hoffman-La Roche*, 493 U.S. at 170 (confirming "the trial court's discretion" to craft appropriate notice in FLSA cases). The content of the proposed Notice is "timely, accurate, and informative" and therefore should be approved. *Id.* at 172. It uses neutral, straightforward language, allowing recipients to learn of their rights to participate in this case, and the consequences of their joining or not joining the action. In addition, the reminders succinctly remind recipients of the deadline for joining the case. Plaintiffs' counsel will bear the cost of mailing, e-mailing, texting, and re-mailing the notices, as well as the cost of sending the reminder postcard.

First, Plaintiffs ask that the Court authorize notice to be sent via U.S. Mail, email, and text message. *See, e.g.*, *Zhang v. Ichiban Grp., LLC*, No. 1:17-CV-148 (MAD/TWD), 2020 WL

1030651, at *10 (N.D.N.Y. Mar. 3, 2020) (approving notice by mail, e-mail, and text message); *Sanchez v. Salsa Con Fuego, Inc.*, No. 16-CV-473 (RJS) (BCM),, 2016 WL 4533574, at *6 (S.D.N.Y. Aug. 24, 2016) ("Email addresses and telephone numbers are efficient methods of providing notice, and in this day and age, they are often more effective than traditional mail."); *Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14-cv-2625 (RJS), 2015 WL 4240985, at *5 (S.D.N.Y. July 13, 2015) (approving text message notice); *Romero*, 2015 WL 2069870, at *5 (authorizing distribution of notice by first class mail and e-mail); *Michael v. Bloomberg L.P.*, No. 14-cv-2657 (TPG), 2015 WL 1810157, at *4 (S.D.N.Y. Apr. 17, 2015) (granting plaintiff's request to distribute notice by mail and e-mail); *see also Mercado*, 2021 WL 2593462, at *4 (authorizing distribution of notice by mail and e-mail). Courts routinely approve notice via text and email "in today's mobile society and [recognize] that these methods of communication may offer a more reliable means of reaching an individual even if that individual is away from home or has moved." *Calvillo v. Bull Rogers, Inc.*, 267 F. Supp. 3d 1307, 1315 (D.N.M. 2017); *see also Thrower v. UniversalPegasus, Int'l Inc.*, 484 F. Supp. 3d 473, 490 (S.D. Tex. 2020) (permitting notice via text message because "e-mails have the infelicitous tendency of slipping through the cracks, especially when folks have multiple e-mail accounts"); *Regan v. City of Hanahan*, No. 2:16-cv-1077-RMG, 2017 WL 1386334, at *3 (D.S.C. Apr. 17, 2017) (approving notice via mail, email, and text message because "individuals are likely to retain their mobile numbers and email addresses even when they move"); *Eley v. Stadium Grp., LLC*, No. 14-cv-1594 (KBJ), 2015 WL 5611331, at *3 (D.D.C. Sept. 22, 2015) (approving notice via mail, email, and text message as "in line with what has been approved in other FLSA collective actions"); *Irvine v. Destination Wild Dunes Mgmt., Inc.*, 132 F. Supp. 3d 707, 711 (D.S.C. 2015) (approving notice via mail, email, and text message, noting that email and phone "serv[e] as the most consistent and reliable method of

communication"). Notice via e-mail and text is particularly appropriate in this case because Plaintiffs and other I.T. Support Employees regularly use and have used email for professional and personal reasons.[30]

Plaintiffs further request that the Court authorize that the printed notice be posted on a standalone website through which opt-ins can also update their mailing address and electronically submit CTJs. Courts allow this to provide opt-ins with easy access to information and an easy method by which to opt-in if they so choose. *See, e.g.*, *Zhang*, 2020 WL 1030651, at *10 (approving notice website and collecting cases); *Varghese v. JP Morgan Chase & Co.*, No. 14 Civ. 1718 (PGG), 2016 WL 4718413, at *9 (S.D.N.Y. Sept. 9, 2016) (same, given that the "same logic supports dissemination of notice via website" as by email "given the reality of communications today" (citation omitted)).

Second, Plaintiffs request that the Court authorize a reminder notice, sent via postcard, email, and text message to potential FLSA Collective members who have not yet returned CTJs halfway through the notice period.[31] Reminder notices are common and cause defendant no prejudice. In Plaintiffs' counsel's experience, potential collective members intend to join a lawsuit to preserve their rights but often fail to do so promptly due to life's other pressing obligations, and a reminder ensures they are given opportunity to vindicate their rights.[32] Reminders serve the FLSA's purpose "to inform as many potential plaintiffs as possible of the collective action and their right to opt-in." *Morris v. Lettire Const., Corp.*, 896 F. Supp. 2d 265, 275 (S.D.N.Y. 2012). Courts have therefore regularly approved the sending of a reminder notice to FLSA collective members who have not responded after the mailing of the initial notice. *See, e.g.*, *Fernandez v.*

---

[30] Barkley Decl. ¶ 21; Bowrey Decl. ¶ 25; Hancock Decl. ¶ 24; Ramirez Decl. ¶ 24.
[31] *See* Ex. 2 to Guerra Decl. (Proposed Reminder Notice).
[32] Guerra Decl. ¶ 4.

*Pinnacle Grp. N.Y. LLC*, No. 21 CIV. 10702 (AT), 2024 WL 2055059, at *4 (S.D.N.Y. May 7, 2024) (Torres, J.) (authorizing plaintiffs' counsel to send reminder notices to potential plaintiffs); *Varghese*, 2016 WL 4718413, at *10 (authorizing reminder notice); *Diatta*, 2016 WL 2865132, at *6 (same); *Lopez v. JVA Indus., Inc.*, No. 14 Civ. 9988(KPF), 2015 WL 5052575, at *4 (S.D.N.Y. Aug. 27, 2015) (same).

Third, Plaintiffs request that FLSA Collective members have 90 days to determine whether to join this action. Notice periods of 90 days are routinely accepted by courts in this District. *See, e.g.*, *Vecchio v. Quest Diagnostics Inc.*, No. 16 Civ. 05165 (ER), 2018 WL 2021615, at *8 (S.D.N.Y. Apr. 30, 2018) ("[G]iven the potential size of this nationwide collective, the Court concludes that the 90-day opt-in period. . . is appropriate"); *Varghese*, 2016 WL 4718413, at *10 n.6 (authorizing 90-day notice period); *Lopez*, 2015 WL 5052575, at *5 (same); *In re Milos Litig.*, 08 Civ. 6666(LBS), 2010 WL 199688, at *2 (S.D.N.Y. Jan. 11, 2010) (same); *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 324 (S.D.N.Y. 2007) (same). A 90-day period will allow potential FLSA Collective members to learn about the case, ask questions, and make this important decision in a considered manner.

Finally, to facilitate notice, Plaintiffs ask the Court to direct NYU Langone to provide to Plaintiffs' counsel, in an electronic spreadsheet format such as Excel, the following information, each contained in a separate column, for each member of the FLSA Collective: first name, last name, last known mailing address, last known personal email address, last known personal telephone number, and employee number. *See, e.g.*, *Fernandez*, 2024 WL 2055059, at *4 (ordering defendants to produce "a computer-readable list of all names, addresses, telephone numbers, and e-mail addresses for all potential opt-in plaintiffs"); *Garcia v. Chipotle Mexican Grill, Inc.*, No. 16 Civ. 601 (ER), 2016 WL 6561302, at *9 (S.D.N.Y. Nov. 4, 2016) (ordering defendant to

"produce the names, titles, compensation rates, dates of employment, last known mailing addresses, known email addresses, and known telephone numbers" for putative class members); *Diatta*, 2016 WL 2865132, at *6 ("Courts routinely order discovery of names, addresses, and telephone numbers in FLSA actions." (citations omitted)). Plaintiffs request this information for a three-year period because courts in this Circuit generally apply a three-year statute of limitations for FLSA claims at the notice stage where willfulness is in dispute. *See, e.g.*, *Mercado,* 2021 WL 2593462, at *3 ("Typically, '[w]here willfulness is disputed, the court applies the three-year statute of limitations for purposes of certifying a representative action." (quotation omitted)). Furthermore, for FLSA Collective members whose notice is returned as undeliverable, Plaintiffs request that the Court direct NYU Langone to provide the last four digits of Social Security numbers to assist with location efforts. Courts routinely order defendants to provide this information in similar cases for the purpose of locating putative class members. *See, e.g.*, *Gomez v. Terri Vegetarian LLC,* No. 17-CV-213 (JMF), 2017 WL 2628880, at *2 (S.D.N.Y. June 16, 2017) (requiring defendants to produce telephone numbers and, if a notice is returned as undeliverable, Social Security numbers, subject to certain protections, "for the sole purpose of performing a skip-trace to identify a new mailing address").

## CONCLUSION

For all of the foregoing reasons, Plaintiffs request that the Court enter an Order:

1) conditionally certifying this action as an FLSA collective action for the FLSA Collective defined as "all persons who work or have worked for NYU Langone as exempt-classified I.T. Support Employees nationwide at any time since December 18, 2021 and who elect to opt into this action";

2) requiring Defendants to provide Plaintiffs, in computer readable form, the first name, last name, last known mailing address, last known personal email address, last known personal

telephone number, and any employee number or unique identifier of all FLSA Collective members;

3) for any FLSA Collective members whose mailed notices are returned as undeliverable, requiring Defendants to provide Plaintiffs, in a computer readable form, the last four digits of their Social Security numbers;

4) authorizing Plaintiffs' counsel to issue the notice attached as Exhibit 1 to the Guerra Declaration by mail, e-mail, text message, and on a standalone website;

5) authorizing Plaintiffs' counsel to re-mail notices that are returned as undeliverable for those individuals for whom counsel can find better addresses;

6) permitting Plaintiffs' counsel to call any individual whose notice is returned as undeliverable for the purpose of obtaining a current address for re-mailing of the notice; and

7) permitting Plaintiffs' counsel to send the reminder notice attached as Exhibit 2 to the Guerra Declaration via mail, e-mail, and text message to those FLSA Collective members who have not responded halfway through the notice period.

Dated: April 2, 2025

Respectfully submitted,

*/s/* Artemio Guerra
**HKM EMPLOYMENT ATTORNEYS LLP**
Artemio Guerra
Briana Beltran
*Admitted Pro Hac Vice*
153 Main Street, Suite 201
New Paltz, NY 12561
Telephone: (212) 439-5127

**OUTTEN & GOLDEN LLP**
Molly A. Brooks
Emma R. Janger

685 Third Ave., 25th Floor
New York, New York 10017
Telephone: (212) 245-1000

*Attorneys for Plaintiffs and the Putative FLSA*
*Collective and Rule 23 Class*